UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Deborah Moore | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| | § | Civil Action No. |
| | § | |
| *versus* | § | 5:21-cv-474 |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Equifax Information Services, LLC and Security Service Federal Credit Union | § § | |
| *Defendants* | | |

Complaint

_____

Introduction

1. The Fair Credit Reporting Act was enacted to ensure consumers' credit reports were accurate and complete. Congress found that inaccurate credit reporting directly impaired the efficiency of the Nation's banking systems of undermine the public confidence in the banking system.

2. The FCRA requires credit bureaus to follow reasonable procedures to assure the maximum possible accuracy of the information they provide concerning individuals.

3. The Act also requires entities who furnish data ("furnishers") to

perform a reasonable investigation after a consumer disputes inaccurate information with a bureau.

4. Plaintiff brings this action for Defendants' violations of the Fair Credit Reporting Act and seeks her actual damages, statutory damages, punitive damages, attorney's fees, and costs.

## Jurisdiction & Venue

5. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## Parties

7. Plaintiff, Deborah Moore, is a natural person who resides in and has resided in San Antonio, Bexar County, Texas at all times relevant to this action.

8. Defendant, Equifax Information Services, LLC, ("Equifax") is a Corporation who can be served via its registered agent, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

9. Equifax compiles and maintains files on consumers on a nationwide basis.

10. Equifax regularly engages in assembling reports containing data and evaluations concerning consumers' economic wealth and creditworthiness.

11. Equifax furnishes such reports to third parties for a monetary fee.

12. Equifax is a consumer reporting agency.

13. Defendant, Security Service Federal Credit Union, is a credit union without a registered agent. Per Civ. Prac. & Rem. Code § 17.025(c)(2) it may be served with process via its president or vice president at its headquarters at 15000 IH 10 West, San Antonio, Texas 78249 or wherever such person may be found.

Facts

14. In 2016 Moore's husband was involved in a car wreck that left him in a coma for a week.

15. He had a long and painful recovery. In order to help her husband during his recovery, Mrs. Moore left her job of 26 years.

16. With overwhelming medical bills and no income, the Moores, after finding no helpful alternatives, filed Chapter 7 bankruptcy.

17. In November 2016 they were discharged from bankruptcy.

18. In 2018 Mr. Moore passed away.

19. In 2019 Deborah Moore purchased a vehicle.

20. The best interest rate she was able to qualify for was 12.19%.

21. This seemed unusually high to her, but she attributed it to the bankruptcy.

22. She tried to refinance the vehicle with Randolph Brooks Federal Credit Union and was denied.

23. As required by law RBFCU sent her an adverse action notice stating she was turned down due to "derogatory and delinquent accounts."

24. While bankruptcy had discharged her unsecured obligations, she remained current on her re-affirmed mortgage and all post-bankruptcy debt. She attributed RBFCU's denial to the bankruptcy.

25. Missing her husband and living alone, Moore to wanted to move to be closer to her children and grandchildren.

26. She began searching for a mortgage and a new home.

27. When she applied for a mortgage, she was turned down because SSFCU reported an account as past due and owing.

28. At the time of their bankruptcy, Mr. and Mrs. Moore had two SSFCU accounts.

29. Both accounts were included in the bankruptcy.

30. Following the bankruptcy, SSFCU reported one account as included in the bankruptcy and the other as past due and owing.

31. Moore disputed the reporting with Equifax.

32. In a dispute response dated September 8, 2020 Equifax stated that it

had forwarded the dispute to SSFCU and conducted its own investigation.

33. Equifax's research, which it claimed involved a third-party vendor, and forwarding the dispute to SSFCU, confirmed the inaccurate information.

34. Moore again disputed the inaccurate information.

35. In a dispute response dated September 24, 2020 Equifax claimed to have "researched the credit account" and forwarded the dispute to SSFCU.

36. This dispute response changed the SSFCU tradeline[1] to the status of "Charge Off."

37. This status was inaccurate as the account was not charged off, but included in a bankruptcy.

38. Following this dispute response, Moore sought a credit limit increase on her Sony credit card.

39. In a letter dated October 8, 2020 Sony turned Moore down for a credit limit increase.

40. Sony's adverse action letter stated that it turned Moore down for the requested increase because Equifax had reported:

---

[1] A credit account information detailing a consumer's payment history is known as a "tradeline."

- Delinquent or derogatory real estate secured loan
- Delinquent or derogatory status on real estate loans is too recent
- Balances on accts too high compared to credit limits and loan amounts
- Delinquent or derogatory account

41. Moore was confused. She had never been late on her mortgage. She had re-affirmed it in bankruptcy.

42. In a credit report dated November 3, 2020 Equifax reported that Moore owed $108,100 on a Kohl's department store credit card.

43. In a section labeled "Comments 1" of the Kohl's tradeline[2] Equifax reported "Fannie mae account."

44. In a section labeled "Comments 2" of the Kohl's tradeline Equifax reported "Fixed rate."

45. Moore was even more confused, Kohls is a retail store, not a mortgagee.

46. She never had a mortgage with Kohls. To her knowledge Kohls does not offer mortgages or act as a mortgage servicer.

47. In a report dated November 10, 2020, Equifax changed its reporting to correctly reflect the Kohl's tradeline.

48. Moore re-requested the credit limit increase with Sony.

---

[2] A credit account information detailing a consumer's payment history is known as a "tradeline."

49. In a letter dated November 18, 2020 Sony denied Moore's request. It states she is turned down for:

- Delinquent or derogatory real estate secured loan
- Delinquent or derogatory status on real estate loans is too recent
- Balances on accts too high compared to credit limits and loan amounts
- Too many inquiries

50. She was still current on her mortgage.

51. The November 10, 2020 report by Equifax does not support Sony's adverse action letter.

52. Sony's letter indicates that it pulled Moore's credit on November 13, 2020.

53. On information and belief Moore alleges that Equifax was reporting different information to Sony than it was to her.

54. In a dispute response dated November 23, 2020 Equifax correctly updated the SSFCU account to reflect that it was included in Moore's bankruptcy

55. Following this Moore re-requested the credit limit increase with Sony.

56. In a letter dated December 19, 2020 Sony turned Moore down. Sony stated that Equifax had told them she was declined because Equifax had told them Moore had:

- Delinquent or derogatory real estate secured loan
- Too many revolving accounts with high balance compared to credit limit
- Delinquent or derogatory status on real estate loans is too recent
- Too many inquiries

57. As of the date of the December 9 letter Moore had never been behind on a real estate secured loan.

58. Equifax again provided different information to Sony that it did to Moore.

## First Cause of Action –Security Service Federal Credit Union's Negligent Violation of the FCRA

59. Security Service Federal Credit Union furnished credit data to Experian.

60. As a furnisher SSFCU is required to participate in reinvestigations conducted by Equifax.

61. A reinvestigation is triggered when a consumer, like Moore, disputes inaccurate credit information with a credit reporting agency, like Equifax.

62. Moore disputed SSFCU's inaccurate reporting on numerous occasions with both SSFCU and Equifax.

63. SSFCU negligently failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681s-2(b). But-for SSFCU's failure to conduct a reasonable investigation it continued to report false, inaccurate, derogatory information and allowed dissemination of the

same to third parties.

64. As a result of SSFCU's negligent violations of the FCRA, Moore suffered damages, including damage to her reputation, higher interest rates, loss of credit opportunities, stress, fear, worry, frustration, humiliation, and embarrassment.

65. Plaintiff seek recovery of her reasonable attorney's fees pursuant to 15 U.S.C. § 1681o(b).

## Second Cause of Action – Security Service Federal Credit Union's Willful Violation of the FCRA

66. Security Service Federal Credit Union furnished credit data to Experian.

67. As a furnisher SSFCU is required to participate in reinvestigations conducted by Equifax.

68. A reinvestigation is triggered when a consumer, like Moore, disputes inaccurate credit information with a credit reporting agency, like Equifax.

69. Moore disputed SSFCU's inaccurate reporting on numerous occasions with both SSFCU and Equifax.

70. SSFCU willfully failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681s-2(b). But-for SSFCU's failure to conduct a reasonable investigation it continued to report false, inaccurate, derogatory information and allowed dissemination of the same to third parties.

71. As a result of SSFCU's willful violations of the FCRA, Moore suffered damages, including damage to her reputation, higher interest rates, loss of credit opportunities, stress, fear, worry, frustration, humiliation, and embarrassment.

72. Plaintiff seek recovery of her reasonable attorney's fees pursuant to 15 U.S.C. § 1681o(b).

### Third Cause of Action – Equifax's Negligent Violation of the FCRA

73. When a consumer disputes the accuracy of information reported by a credit reporting agency, the dispute process is triggered. For a credit reporting agency, the dispute process requires it to forward the dispute to the furnisher and conduct its own separate investigation. A credit reporting agency cannot rely solely on a furnisher's investigation.[3]

74. In Moore's case Equifax negligently failed to investigate her disputes.

75. Equifax's negligent failure to comply with the FCRA includes:

    a. Failing to follow reasonable procedures to assure the maximum possible accuracy of the information of Moore's consumer report as required by 15 U.S.C. § 1681e(b); and

    b. Failing to comply with the reinvestigation requirements of 15 U.S.C. § 1681i, including but not limited to its parts and

---

[3] A practice known a "parroting."

subparts.

76. As a result of Equifax's negligent violations of the FCRA, Moore suffered damages, including undue separation from her family, higher interest rates, loss of credit opportunities, damage to her reputation, stress, fear, worry, humiliation, and embarrassment.

77. Equifax's failure to comply with the FCRA was negligent and entitles Moore to seek actual damages in an amount to be determined by a jury.

78. Moore also seeks attorney's fees pursuant to 15 U.S.C. § 1681o(b).

## Fourth Cause of Action – Equifax's Willful Violation of the FCRA

79. When a consumer disputes the accuracy of information reported by a credit reporting agency, the dispute process is triggered. For a credit reporting agency, the dispute process requires it to forward the dispute to the furnisher and conduct its own separate investigation. A credit reporting agency cannot rely solely on a furnisher's investigation.[4]

80. In Moore's case Equifax willfully failed to investigate her disputes.

81. Equifax's willful failure to comply with the FCRA includes:

    a. Failing to follow reasonable procedures to assure the maximum possible accuracy of the information of Moore's

---

[4] A practice known a "parroting."

      consumer report as required by 15 U.S.C. § 1681e(b); and

    b. Failing to comply with the reinvestigation requirements of 15 U.S.C. § 1681i, including but not limited to its parts and subparts.

82. As a result of Equifax's willful violations of the FCRA, Moore suffered damages, including undue separation from her family, higher interest rates, loss of credit opportunities, damage to her reputation, stress, fear, worry, humiliation, and embarrassment.

83. Equifax's failure to comply with the FCRA was willful and entitles Moore to seek actual damages in an amount to be determined by a jury.

84. The willful nature of Equifax's failures entitles Moore to punitive damages in an amount to be determined by a jury.

85. Moore also seeks attorney's fees pursuant to 15 U.S.C. § 1681o(b).

## Jury Demand

86. Plaintiff demands this case be tried before a jury.

## Prayer for Relief

Plaintiff seeks judgment in favor of Plaintiff and against Defendants in accordance with the evidence adduced at trial, based on the following requested relief:

1. For the First Cause of Action:
    a. Actual damages as determined by a jury; and
    b. Attorney's fees and costs.
2. For the Second Cause of Action:
    a. Actual damages as determined by a jury;
    b. Punitive damages as determined by a jury;
    c. Statutory damages; and
    d. Attorney's fees and costs.
3. For the Third Cause of Action:
    a. Actual damages as determined by a jury;
    b. Attorney's fees and costs.
4. For the Fourth Cause of Action:
    a. Actual damages as determined by a jury;
    b. Punitive damages as determined by a jury;
    c. Statutory damages; and
    d. Attorney's fees and costs.

Dated: May 17, 2021            Respectfully Submitted,

/s/William M. Clanton
William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie
San Antonio, TX 78216
210 226 0800
210 338 8660 fax
bill@clantonlawoffice.com